AO 106 (Rev. 04/10) Application for a Search Warrant *(Page 1)*

---

UNITED STATES DISTRICT COURT
for the
Northern District of New York

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>(1) Apple iPhone,<br>(2) Apple iPhone,<br>(3) Apple iPhone,<br>(4) Apple iPhone,<br>(5) Apple iPhone,<br>(6) Samsung Galaxy cell phone<br>(7) Samsung Galaxy cell phone,<br>(8) Samsung Galaxy cell phone,<br>(9) Samsung Galaxy cell phone, and<br>(10) T-Mobile REVVL 7 cell phone,<br><br>All currently located at the Massena Border Patrol Station- 135 Trippany Road, Massena, New York 13662. | Case No.  8:25-SW-271 (GLF)<br>USAO No. |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:
*(identify the person or describe the property to be searched and its given location)*:

See Attachment A.

located in the    Northern            District of    New York           , there is now concealed
*(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1324 | Alien smuggling |
| 8 U.S.C. § 1325 | Illegal entry into the United States |
| 8 U.S.C. § 1326 | Illegal reentry into the United States |

AO 106 (Rev. 04/10) Application for a Search Warrant *(Page 2)*

The application is based on these facts:
See attached affidavit.

☒ Continued on the attached sheet.

☒ Delayed notice of ___30___ days (give exact ending date if more than 30 days): is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Dylan J. Thomas*    10/31/2025
*Applicant's signature*

Dylan Thomas, Border Patrol Agent
*Printed name and title*

Attested to by the affiant in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

Date:   Nov. 3, 2025
        2:10 PM

*Judge's signature*

City and State:   Plattsburgh, NY        Hon. Gary L. Favro, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF:<br>(1) Apple iPhone,<br>(2) Apple iPhone,<br>(3) Apple iPhone,<br>(4) Apple iPhone,<br>(5) Apple iPhone,<br>(6) Samsung Galaxy cell phone<br>(7) Samsung Galaxy cell phone,<br>(8) Samsung Galaxy cell phone,<br>(9) Samsung Galaxy cell phone, and<br>(10) T-Mobile REVVL 7 cell phone,<br><br>All currently located at the Massena Border Patrol Station- 135 Trippany Road, Massena, New York 13662. | Case No.   8:25-SW-271 (GLF) |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Dylan J. Thomas, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.  I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of (1) Apple iPhone, (2) Apple iPhone, (3) Apple iPhone, (4) Apple iPhone, (5) Apple iPhone, (6) Samsung Galaxy cell phone, (7) Samsung Galaxy cell phone, (8) Samsung Galaxy cell phone, (9) Samsung Galaxy cell phone and (10) T-Mobile REVVL 7 cell phone (hereinafter "the Devices") which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Border Patrol Agent (BPA) with the United States Department of Homeland Security (DHS), Bureau of Customs and Border Protection (CBP), United States Border Patrol (USBP), assigned to the Burke Border Patrol Station. I have been a Border Patrol Agent since August 2017. My primary duty is to assist in the prevention of illicit trafficking of people and contraband between the official ports of entry. My authority to perform this mission is articulated in the Immigration and Nationality Act, sections 235 and 287, and Title 8 U.S.C. Section 1357. These bodies of law relate to, among other things, a Border Patrol Agents authority to interrogate any alien or person believed to be an alien, and to make an arrest of any alien who is entering or attempting to enter the United States in violation of the immigration laws. To enforce these laws, I have received training at the Federal Law Enforcement Training Center in Artesia, New Mexico in Law, Operations, Firearms, Driving Techniques, and Physical Techniques.

3. I have investigated violations of the Immigration Nationality Act (INA) including illegal entry of aliens in violation of Title 8, United States Code, Section 1325, illegal re-entry of aliens in violation of Title 8, United States Code, Section 1326 and the smuggling of aliens in violation of Title 8, United States Code, Section 1324. I have written and executed search warrants for electronic devices and have reviewed the evidence contained within. I have analyzed data and information from electronic devices and presented that data as evidence during criminal investigations.

4. The applied-for warrant would authorize the forensic examination of the Devices, as described in Attachment A, for the purpose of identifying electronically stored data described in Attachment B. Based on my training and experience and the facts set forth in this affidavit, there is probable cause to believe that violations of Title 8, United States

2

Code, Section 1324 have been committed by Lesly PIERRE and Duckene SENATUS. Also, there is probable cause to believe that a violation of Title 8, United States Code, Section 1325 have been committed by Theoger EMMANUEL, Lucien FLEURENTIN, Sony JOSIL, Cedeme MAURICE, and Jean Wesnel RENE. In addition, there is probable cause to believe that a violation of Title 8, United States Code, Section 1326 has been committed by Champagne EMMANUEL. There is also probable cause to search the property described in Attachment A, for evidence of these crimes as described in Attachment B.

5. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge of this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

6. The property to be searched is: (1) Apple iPhone, (2) Apple iPhone, (3) Apple iPhone, (4) Apple iPhone, (5) Apple iPhone, (6) Samsung Galaxy cell phone, (7) Samsung Galaxy cell phone, (8) Samsung Galaxy cell phone, (9) Samsung Galaxy cell phone and (10) T-Mobile REVVL 7 cell phone, all currently located at the Massena Border Patrol Station-135 Trippany Road, Massena, New York 13662.

7. The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

1. On October 24, 2025, at approximately 11:05 P.M., Swanton Sector Border Patrol Dispatch (KAD-640) notified Border Patrol Agents assigned to the Burke Border Patrol

3

Station of four individuals that were detected walking southbound in the Wilson Farm area of Churubusco, NY. Churubusco has been a commonly used corridor for smuggling activity for the past several years. Based on experience of the agents, this is a regularly utilized location for smuggling vehicles to pick up individuals that cross the United States/Canada international boundary illegally.

2. Agents strategically positioned themselves in the Churubusco, NY area along frequently used points of ingress and egress, in anticipation of encountering a possible pick-up vehicle. Approximately thirty minutes later, while utilizing a service issued laptop, agents detected a smuggling vehicle entering the Burke Station area of responsibility. This vehicle was associated with a previous smuggling event. The vehicle appeared to be travelling in tandem with another vehicle.

3. As anticipated based on past events, both suspected pick-up vehicles travelling eastbound on US-11, turned northbound onto Lost Nations Road in Churubusco, NY. The suspected pick-up vehicles were then detected at the intersection of Lost Nations Road and Frontier Road. The vehicles turned eastbound onto Frontier Road and moments later were detected in the immediate area where the individuals had just been detected walking southbound away from the border.

4. Approximately three minutes later, the suspected pick-up vehicles were detected travelling back westbound on Frontier Road. At this time all agents in the

Churubusco area responded to the intersection of US-11 and Lost Nations Road, as this appeared to be the point of ingress and egress for the pick-up vehicles.

5. As anticipated, agents observed both vehicles travelling southbound on Lost Nations Road toward US-11. The agent observing the suspected pick-up vehicles saw that the windows of both vehicles were completely fogged over, indicative of several occupants in the vehicles that had just come out of the wooded area along the border. It had rained earlier in the night; in those conditions, it is common to see condensation on the windows of a pick-up vehicle with occupants in it. As both vehicles approached the intersection, agents pulled out behind them and activated their emergency lights and sirens to initiate a traffic stop.

6. Both vehicles, identified as a blue Toyota RAV4 and a gray Hyundai Elantra, then accelerated toward the intersection failing to yield for the agent. At this time, all other agents began to close the distance between the suspected pick-up vehicles and the lead agent conducting the traffic stop.

7. The lead vehicle, the RAV4, attempted to evade agents by swerving into the oncoming lane, nearly causing a head on collision with a responding agent. However, due to the position of the responding agent's vehicle in the oncoming lane, the driver could not move and ultimately yielded. The second vehicle, the Elantra, stopped in the middle of the road and the agents following pulled up behind it.

8.   An additional agent pulled onto the road and stopped in front of the Elantra for safety purposes of the agents in front of him. The two agents conducting a traffic stop on the Hyundai Elantra immediately approached the vehicle and ordered the driver to roll down his window and turn off the vehicle. The driver, later identified as Duckene SENATUS, did not comply. Agents opened the driver's door, and SENATUS put the vehicle in gear attempting to drive forward. SENATUS rammed into the Border Patrol K-9 service vehicle with the K-9 inside of it.

9.   SENATUS was ultimately secured in handcuffs. Meanwhile, agents conducting the traffic stop on the RAV4 also secured the driver, later identified as Lesly PIERRE after a brief struggle.

10.   Moments after both drivers were secure, additional law enforcement arrived on scene and helped the agents as they placed both drivers of the smuggling vehicles in marked Border Patrol vehicles.

11.   At this time, agent identified themselves as United States Border Patrol Agents and began to question all passengers in both vehicles regarding their citizenship.

12.   All six passengers (three passengers in each vehicle) stated that they were citizens of Haiti. All six passengers freely admitted to illegally crossing the United States/Canada International Border earlier in the night.

13. At that time a marked Border Patrol transport van arrived on scene and all six passengers were secured inside. All individuals were then placed under arrest and transported to the Burke Border Patrol Station for further record checks, interviews and processing.

14. While at the station, biographical information and fingerprints were entered into Department of Homeland Security databases for all subjects. Record checks confirmed that all subjects are citizens and nationals of Haiti with no valid visas, or paperwork to be in, pass through, or remain within the United States.

15. At this time, Burke Agents took custody of all three subjects and transported them back to the Burke Border Patrol Station for further record checks, interviews and processing.

16. At the Burke Border Patrol Station, the subjects and their personal belongings were searched for weapons and other illicit contraband. During this search, several cellphones were discovered in the vehicle, on the subjects' persons, in their personal belongings, or were claimed as belonging to the following subjects as described below:

   a. Device 1: (1) Apple iPhone. seized from Theoger EMMANUEL.
   b. Device 2: (2) Apple iPhone. seized from Lucien FLEURENTIN.
   c. Device 3: (3) Apple iPhone. seized from Lesly PIERRE.
   d. Device 4: (4) Apple iPhone. seized from Duckene SENATUS.
   e. Device 5: (5) Apple iPhone. seized from Sony JOSIL.

7

 f. Device 6: (6) Samsung Galaxy cell phone seized from Sony JOSIL.

 g. Device 7: (7) Samsung Galaxy cell phone seized from Cedeme MAURICE.

 h. Device 8: (8) Samsung Galaxy cell phone seized from Cedeme MAURICE.

 i. Device 9: (9) Samsung Galaxy cell phone seized from Champagne EMMANUEL.

 j. Device 10: (10) T-Mobile REVVL 7 cell phone seized from Jean Wesnel RENE.

## TECHNICAL TERMS

17. Based on my training and experience, I use the following technical terms to convey the following meanings:

 a. IP Address: The Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address looks like a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

 b. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

c. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic films. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

d. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

e. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records of the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an

extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

f.  PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments, or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

18.   Based on my training, experience, and research, I know that cellular phones have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining

data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

19. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period on the device. This information can sometimes be recovered with forensics tools.

20. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the devices were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw

conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

21. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the devices to human inspection in order to determine whether it is evidence described by the warrant. The examination will be performed by representatives from the Department of Homeland Security and their designees.

22. *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not

involve the physical intrusion onto premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

23. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Devices described in Attachment A to seek the items described in Attachment B.

Attested to by the Affiant:

*Dylan J. Thomas*  10/31/2025

Dylan J. Thomas
Border Patrol Agent
United States Border Patrol

I, the Honorable Gary L. Favro, United States Magistrate Judge, hereby acknowledge that this affidavit was attested to by the affiant by telephone on ~~October~~ Nov. 3, 2025 in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

*Gary L. Favro*

Hon. Gary L. Favro
United States Magistrate Judge

13

## ATTACHMENT A

### Property to be Searched

The properties to be searched are: (1) Apple iPhone, (2) Apple iPhone, (3) Apple iPhone, (4) Apple iPhone, (5) Apple iPhone, (6) Samsung Galaxy cell phone, (7) Samsung Galaxy cell phone, (8) Samsung Galaxy cell phone, (9) Samsung Galaxy cell phone and (10) T-Mobile REVVL 7 cell phone, all currently located at the Massena Border Patrol Station- 135 Trippany Road, Massena, New York 13662. This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

### Particular Things to be Seized

1. All records on the Devices described in Attachment A that relate to violations of Title 8 U.S.C. §§ 1324, 1325 and 1326 and conspiracy to commit same, and involve Lesly PIERRE, Duckene SENATUS, Theoger EMMANUEL, Lucien FLEURENTIN, Sony JOSIL, Cedeme MAURICE, Jean Wesnel RENE, and Champagne EMMANUEL, and other as-yet unidentified co-conspirators, including:

   a. Listings of incoming and outgoing calls with corresponding date/time of calls.

   b. Stored telephone and address directories.

   c. Direct connect and identification numbers.

   d. Pictures and videos.

   e. All audio recordings.

   f. All voice mail recordings.

   g. All location and GPS data.

   h. All instant messaging and related stored communications.

   i. All SMS messages and related stored communications; and,

   j. Any other notations or electronic storage of any kind.

2. Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

   a. Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered any Internet search engine, and records of user-typed web addresses.

3. As used above, the terms "records" and "information" include all the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.